# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CASSIE JACKSON<br>o/b/o J.L.B., a minor,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,[1]<br>Acting Commissioner of Social Security,<br><br>Defendant. | CASE NO. 4:16-cv-00047-TCK-GBC<br><br>(MAGISTRATE JUDGE COHN)<br><br>REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S APPEAL |

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S APPEAL

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Plaintiff Cassie Jackson o/b/o J.L.B., a minor, ("Plaintiff") seeks judicial review of the Commissioner of the Social Security Administration's decision finding of not disabled. As set forth below, the undersigned recommends to **DENY** Plaintiff's appeal and **AFFIRM** the Commissioner's decision in this case.

### I. LEGAL STANDARD FOR CHILDHOOD DISABILITY

An individual under the age of 18 will be considered disabled if she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations." 42 U.S.C. § 1382c(a)(3)(c)(i). The Commissioner's regulations prescribe a three-step sequential evaluation process for determining whether a child's impairment(s) result in marked and severe functional limitations:

---

[1] Effective January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Commissioner Berryhill is automatically substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

> Step one: If a child is engaged in substantial gainful activity, she is not disabled. 20 C.F.R. § 416.924(b) (2016).
>
> Step two: If a child's impairment(s) are not severe, i.e., causes no more than minimal functional limitations, she is not disabled. 20 C.F.R. § 416.924(c).
>
> Step three: If a child's impairment(s) do not meet, medically equal, or functionally equal the listings (20 C.F.R. pt. 404, Subpt. P, app. 1), she is not disabled.

20 C.F.R. § 416.924(d). To determine whether a child's impairment(s) functionally equal the listings, the Commissioner assesses the functional limitations caused by the child's impairment(s). See 20 C.F.R. § 416.926a(a). The Commissioner considers how a child functions in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). If a child's impairments result in "marked" limitations (i.e., limitations that seriously interfere with the child's ability to perform activities) in two domains, or an "extreme" limitation (i.e., a limitation that very seriously interferes with the child's ability to perform activities) in one domain, the impairment(s) functionally equal the listings and the child will be found disabled. See 20 C.F.R. § 416.926a(d).

## II. STANDARD OF REVIEW

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See e.g., 42 U.S.C. § 405(g) ("court shall review only the question of conformity with such regulations and the validity of such regulations"); Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the [Administrative Law Judge's] findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

### III. BACKGROUND

**A. Procedural History**

In December 2012, Plaintiff protectively filed an application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-83c, on behalf of her daughter, J.L.B., a minor child. (Tr. 140-48). Plaintiff alleged J.L.B. became disabled on August 27, 2006, due to asthma and behavioral issues. (Tr. 156). Plaintiff's claim was denied initially and on reconsideration. (Tr. 69-88). Following a hearing in March 2014 (Tr. 41-68), an administrative law judge ("ALJ"), in a decision dated May 7, 2014, concluded that J.L.B. was not disabled within the meaning of the Act. (Tr. 13-24). On December 7, 2015, the Appeals Council declined review of the ALJ's decision. (Tr. 1-6). This appeal followed.

### IV. ISSUES AND ANALYSIS

On appeal, Plaintiff alleges three errors: (1) the ALJ's decision that JLB's impairments do not functionally equal a listed impairment is unsupported by the substantial evidence of the record as a whole; (2) the ALJ failed to fully and fairly develop the record; and (3) the ALJ erred as a matter of law in failing to make a proper credibility determination. (Pl. Br. at 1, Doc. 12).

3

A.      **Listed Impairment**

1.      **ALJ Analysis**

Plaintiff states the ALJ erred in finding JLB's impairments did not functionally equal a listed impairment. (Pl. Br. at 1). The ALJ reviewed the record in order to make a decision.

> The claimant was born on August 27, 2001. Therefore, she was a school-age child on December 18, 2012, the date the application was filed, and is currently a school-age child …
>
> The claimant has the following severe impairments: asthma and oppositional defiant disorder ("ODD") …
>
> Ms. Cassie Jackson spoke on behalf of her daughter, J.L.B. Ms. Jackson said she had never requested the school administrators to place her on an IEP. J.L.B. does not receive any special treatment at school …
>
> J.L.B. has not missed any school because of her asthma … Remedial reading teacher Laura Bellis described J.L.B. need[s] constant attention and more help than any other remedial student … In the current school year, science teacher Traci DeRosa wrote J.L.B. read at grade level 3.6 although she was actually in the seventh grade …

(Tr. 16, 18). The ALJ went on to address each domain to determine whether JLB functionally equaled a listed impairment.

a.      **Acquiring and Using Information**

> The claimant has less than marked limitations in acquiring and using information. Her seventh grade math teacher wrote that J.L.B. had a very severe problem reading and comprehending written material. There were serious problems with her comprehending oral instructions, expressing herself in writing, and doing math problems. However, at the disability reconsideration level, J.L.B. still was undiagnosed with a learning disorder and her grades were regarded as adequate. At the hearing, her mother testified J.L.B. takes no special education classes. There are no accommodations made for her at school. She is getting "A" and "B" grades except for her "C" in math.

(Tr. 16, 18-19). Plaintiff contends the ALJ found J.L.B. did not have any accommodations made in school despite enrollment in remedial reading. (Pl. Br. at 2). However, Plaintiff concedes J.L.B.

4

did not have an I.E.P., and at the hearing, Plaintiff testified J.L.B. did not receive any special treatment in school. (Tr. 18).

Plaintiff states J.L.B.'s science and math teachers noted she had obvious problems in acquiring and using information and problem solving. (Pl. Br. at 2). Plaintiff further states J.L.B.'s band teacher noted she had obvious problems learning new material and recalling previously learned material. Id. Plaintiff points to J.L.B.'s 6th grade English teacher who said she had an obvious problem comprehending oral instructions, understanding school and content vocabulary, comprehending and doing math problems, providing organized oral explanations, expressing ideas in written form, learning new material, and recalling previously learned material. (Pl. Br. at 2 (citing Tr. 310)).

However, as the ALJ found, at the disability reconsideration level, J.L.B. still was undiagnosed with a learning disorder and her grades were regarded as adequate. (Tr. 19-20). At the hearing, her mother testified J.L.B. takes no special education classes. (Tr. 19-20). There are no accommodations made for her at school. (Tr. 19-20). She is getting "A" and "B" grades except for her "C" in math. (Tr. 19-20). The ALJ had substantial evidence to support a less than marked limitation in acquiring and using information.

    b.  **Attending and Completing Tasks**

> The claimant has less than marked limitation in attending and completing tasks. J.L.B. was noted by her teachers having a problem with organizing her school materials, completing class / homework assignments, and completing work accurately without careless mistakes. Yet, ratings from the teachers and school function reports did not reflect a marked limitation in this domain (Exhibit 4A, page 6).

(Tr. 20). Plaintiff contends the ALJ found J.L.B. had less than marked limitation in this domain and cited Exhibit 4A from Dr. Cummings and / or Dr. Cook. (Pl. Br. at 3). Plaintiff states J.L.B.'s 6th grade teacher said she had obvious problems focusing and refocusing on tasks and carrying

5

out multi-step instructions; she had a serious problem working and finishing on time; and a very serious problem organizing and complete assignments. (Pl. Br. at 3 (citing Tr. 311)). Plaintiff states J.L.B.'s 7th grade science teacher said she had an obvious problem with focusing, multi-step instructions, taking turns, and not distracting others. (Pl. Br. at 3 (citing Tr. 262)). J.L.B. would become focused on the object of her distraction. Id. J.L.B.'s 7th grade remedial reading teacher said she had an obvious problem with multi-step instructions and finishing work on time, a serious problem with taking turns, and a very serious problem with completing work without careless mistakes. (Pl. Br. at 3-4 (citing Tr. 325)). J.L.B.'s band teacher said she had obvious problems sustaining attention, focusing and refocusing, and completing assignments. (Pl. Br. at 4 (citing Tr. 217)).

Essentially, the ALJ agreed with Plaintiff's evaluation of the evidence as the ALJ cited J.L.B.'s various struggles in the record. However, the ALJ found J.L.B.'s limitation did not rise to the level of "marked." The ALJ had substantial evidence to make this finding, based on the teachers' statements and the findings of "not marked" by the doctors. (Tr. 20).

### c. Interacting and Relating with Others

> The claimant has less than marked limitation in interacting and relating with others. She received a 5-day school suspension for fighting. Her mother said she was attacked by the other girl. J.L.B. was described by her mother as "bossy" and shows disrespect toward her teachers. Her mother wrote that J.L.B. lies to cover her behavior and to steal when it suits her purposes. Her mother also stated that J.L.B. is able to make friends but has difficulty keeping them. One of J.L.B.'s teachers indicated there are problems with her playing cooperatively, expressing anger appropriately, following rules, and taking turns in conversation …

(Tr. 21). Plaintiff contends the ALJ failed to explain how J.L.B.'s problems and severe impairment of ODD support a less than marked limitation. (Pl. Br. at 4). Plaintiff states J.L.B.'s science teacher said she had an obvious problem expressing anger appropriately, following rules, playing cooperatively, making friends, obeying authority, and taking turns. (Pl. Br. at 4 (citing Tr. 263)).

6

The science teacher said she had an obvious problem with seeking attention. (Pl. Br. at 4 (citing Tr. 263)). J.L.B.'s remedial reading teacher said she had an obvious problem with playing cooperatively and using adequate vocabulary to express her thoughts, a serious problem with interpreting body language, and a very serious problem with making friends. (Pl. Br. at 4-5 (citing Tr. 236)). J.L.B.'s band teacher said she had obvious problems playing cooperatively, expressing anger appropriately, and introducing appropriate topics of conversation. (Pl. Br. at 5 (citing Tr. 218)). Plaintiff noted in addition to the 5-day suspension for fighting, J.L.B. had also been suspended in 2012 and 2013 for bullying and stealing. (Pl. Br. at 5 (citing Tr. 199)).

In a Tenth Circuit case, the Court of Appeals found a child claimant met the standard for "extreme" in the domain of interacting and relating with others. See Knight ex rel. P.K. v. Colvin, 756 F.3d 1171, 1177 (10th Cir. 2014) (finding daughter met extreme limitation when suffered from learning disability, hearing loss, attention deficit hyperactivity disorder (ADHD), and "temper" … i.e., the daughter was very aggressive and wielded knife in fights with siblings, in addition to three years of multiple potent psychostimulant, antipsychotic, and antidepressant medications.). Although in the current case Plaintiff argues J.L.B. met the standard for "marked," the Tenth Circuit's analysis of an "extreme" fact pattern is instructive.

In Heintzelman, the District Court of Kansas found a child claimant met the marked limitation under the domain of interacting and relating with others.

> [The child claimant] has been diagnosed with a moderate to severe articulation disorder and a mild receptive and expressive language disorder … While … he is able to function at school on a daily basis, the claimant experiences nightly temper tantrums which, at times, can escalate into a violent rage …
>
> The state agency assessment found that plaintiff had a marked limitation in this domain …
>
> The ALJ gave substantial weight to the assessment, finding that the opinions of [the doctors] to be consistent with the objective medical evidence of record …

7

> Again, although there is some evidence in the record which might support a finding that plaintiff has an extreme limitation in the domain of interacting and relating with others, the court can neither reweigh the evidence nor substitute its judgment for that of the agency. The state agency assessment found that plaintiff's limitation in this domain was marked. No medical or other source opined that plaintiff had an extreme limitation in this domain … Therefore, the court finds that substantial evidence supports the ALJ's finding that plaintiff has a marked, but not an extreme limitation, in the domain of interacting and relating with others.

Heintzelman ex rel. DH v. Astrue, 622 F. Supp. 2d 1102, 1107-08 (D. Kan. 2008). The Court found the child claimant met the marked limitation from diagnoses of articulation disorder and a mild receptive and expressive language disorder, nightly rages and temper tantrums, and a finding of marked by the state agency assessment. In the current case, J.L.B. lacks a finding of marked from a physician in the record.

In Chapman, the District Court of Colorado upheld the ALJ's finding a child claimant with ODD did not meet the standard for marked limitation.

> Each DDS evaluation cited by the ALJ found that A.C. has no "marked" or "extreme" limitations in any domain … Other school records in the evidence, including the most recent records submitted by plaintiff to the Appeals Council, while demonstrating that A.C. does indeed experience symptoms of ADHD and oppositional defiant disorder that make his school and social activities more difficult than they would be for an average child of his age, do not show that he has more than moderate limitations in any domain. Thus, I find that the ALJ's conclusions regarding A.C.'s functioning in each domain (which I read in conjunction with the ALJ's general discussion of the record evidence) are supported by substantial evidence.

Chapman v. Astrue, 2009 WL 2399931, at *5 & *9 (D. Colo. July 31, 2009). Similarly, in this case, although J.L.B. has challenges with ODD, no physician evaluations found "marked" or "extreme" limitations in any domain. Thus, substantial evidence supported the ALJ's finding of less than marked limitation.

### d. Moving About and Manipulating Objects

"The claimant has no limitation in moving about and manipulating objects…" (Tr. 22). Plaintiff contends there is no reviewable explanation by the ALJ to determine whether there was

8

substantial evidence. (Pl. Br. at 5). Plaintiff states J.L.B.'s asthma requires her to rest while playing basketball and she cannot run a mile or climb stairs. (Pl. Br. at 5 (citing Tr. 57, 61)). She has a cough, uses her inhaler daily, and her activity is "affected." (Pl. Br. at 5-6 (citing Tr. 526-27)). Plaintiff further states J.L.B.'s remedial reading teacher noted she had to miss 20 minutes of class to use the inhaler. (Pl. Br. at 6 (citing Tr. 266)).

As the ALJ cited in the decision (see Tr. 21-22), the C.F.R. discusses this domain and provides examples of marked limitation.

> Moving about and manipulating objects. In this domain, we consider how you move your body from one place to another and how you move and manipulate things. These are called gross and fine motor skills …
>
> Adolescents (age 12 to attainment of age 18). As an adolescent, you should be able to use your motor skills freely and easily to get about your school, the neighborhood, and the community. You should be able to participate in a full range of individual and group physical fitness activities. You should show mature skills in activities requiring eye-hand coordination, and should have the fine motor skills needed to write efficiently or type on a keyboard.
>
> (i) You experience muscle weakness, joint stiffness, or sensory loss (e.g., spasticity, hypotonia, neuropathy, or paresthesia) that interferes with your motor activities (e.g., you unintentionally drop things).
>
> (ii) You have trouble climbing up and down stairs, or have jerky or disorganized locomotion or difficulty with your balance.
>
> (iii) You have difficulty coordinating gross motor movements (e.g., bending, kneeling, crawling, running, jumping rope, or riding a bike).
>
> (iv) You have difficulty with sequencing hand or finger movements.
>
> (v) You have difficulty with fine motor movement (e.g., gripping or grasping objects).
>
> (vi) You have poor eye-hand coordination when using a pencil or scissors.

20 C.F.R. § 416.926a. Although Plaintiff states J.L.B. has trouble with climbing stairs due to asthma, she did not meet the listing criteria for asthma. (Tr. 16-17). V. Cook, M.D., found J.L.B.'s asthma attacks do not occur frequently enough to interfere with normal activities. (Tr. 24, 83-85). As for the remaining elements of moving about and manipulating objects, Plaintiff does not present

any evidence of a marked limitation in gross and fine motor skills. Moreover, no physician found a limitation for J.L.B. in this domain. Therefore, substantial evidence supported the ALJ's finding of no limitation in moving about and manipulating objects.

### e. Caring for Yourself

"The claimant has less than marked limitation in the ability to care for herself. J.L.B. has problems with handling her frustration and being patient. Other deficiencies were noted in her taking care of personal hygiene and knowing when to ask for help…" (Tr. 23). Plaintiff contends the ALJ found J.L.B. had less than marked limitation in this domain despite problems handling frustration and knowing when to ask for help. (Pl. Br. at 6). Plaintiff states J.L.B.'s clothes were frequently soiled or dirty (Pl. Br. at 6 (citing Tr. 314)). The remedial reading teacher said J.L.B. had a very serious problem knowing when to ask for help on an hourly basis; a problem with hygiene on a weekly basis; a very serious problem caring for her physical needs on a daily basis; and an obvious problem with emotional needs and coping skills on a weekly basis. (Pl. Br. at 6-7 (citing Tr. 238)). J.L.B. often had clothes that could be cleaner or did not fit. (Pl. Br. at 6-7 (citing Tr. 238)). Physicians noted "fair" hygiene. (Pl. Br. at 7 (citing Tr. 325)).

In a February 2013 "function report," Plaintiff indicated J.L.B. did not have any difficulty taking care of personal needs (Tr. 170). Based on the evidence in the record, the ALJ reasonably concluded J.L.B. had a "less than marked" limitation in the domain of caring for herself. (Tr. 23).

### f. Health and Physical Well-Being

> The claimant has less than marked limitation in health and physical well-being. One of her teachers wrote that J.L.B. has trouble reading print and needed glasses. Another teacher wrote that J.L.B.'s use of an inhaler for her asthma resulted in 20 minutes of lost instruction in class. In a function report, J.L.B.'s mother wrote that the claimant loses breath while riding a bike or running. After exertion, she allegedly needs to have a breathing treatment.

(Tr. 23). Plaintiff contends the ALJ found J.L.B. had less than marked limitation in this domain despite J.L.B. needing glasses; having difficulty reading print; using an inhaler; and losing breath during biking or running. (Pl. Br. at 7). Plaintiff states J.L.B.'s records note her as overweight or obese. (Pl. Br. at 7 (citing Tr. 275, 282)).

Based on the record evidence, the ALJ could reasonably conclude J.L.B. had a "less than marked" limitation in the domain of caring for herself. (Tr. 23). Thus, the ALJ reviewed each of the domains and found J.L.B. did not functionally equal a listed impairment. Substantial evidence supports the decision.

**B.    Duty to Develop**

    **1.    ALJ Reliance on State Agency Physicians**

Plaintiff states the ALJ erred by giving the opinions of the Doctors Cummings, Cook, and Taber great weight. (Pl. Br. at 7). In the decision, the ALJ evaluated and attributed weight to the opinions of the state agency consultants.

> Great weight is given the opinion by Ron Cummings, Ph.D. that the claimant does not meet or equal a listing and does not functionally equal a listing. Great weight is also given the opinion by V. Cook, M.D. that the claimant's asthma attacks do not occur frequently enough to seriously interfere with her normal activities. Further, Dr. Cook wrote the medical evidence does not show any other impairments which would be considered disabling.
>
> Great weight is given the Domain Evaluations by Sharon Taber, Ph.D. Dr. Taber supports her assessment of the claimant's performances in each domain with evidence from the record, including teacher questionnaires and medical sources.

(Tr. 24). Thus, the ALJ evaluated the opinions of the state agency consultants in the decision. Plaintiff states the doctors did not examine Plaintiff. (Pl. Br. at 7). However, examination is only one of the factors under 20 C.F.R. §§ 404.1527 and 416.927. Moreover, the state agency consultants relied on the findings of teachers and medical records. State agency physicians are acceptable medical sources whose opinions ALJs are entitled to consider. See 20 C.F.R. §

11

416.927(e)(2)(i) (state agency medical consultants "are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation"); Flaherty v. Astrue, 515 F.3d 1067, 1071 (10th Cir. 2008) (a non-examining physician is an acceptable medical source, whose opinion the ALJ is entitled to consider). The ALJ may rely on a state agency consultant if the ALJ explains the basis for the weight given. The undersigned finds no error as to the ALJ's reliance on the state agency physicians.

Plaintiff states the ALJ must explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p. (Pl. Br. at 8). Plaintiff states the doctors either found no limitations or less than marked limitations. (Pl. Br. at 8). An ALJ is entitled generally to credit parts of an opinion without crediting the entire opinion. See Butler v. Astrue, 410 F. App'x 137, 143 (10th Cir. 2011) (affirming decision where the ALJ gave significant weight to examining physician's functional test results, but gave no weight to examining physician's opinion that the plaintiff could not sustain full-time work) (unpublished)[2]; see also Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D. D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); and Smith v. Colvin, 821 F.3d 1264, 1268 (10th Cir. 2016) (affirming where the ALJ "arrived at an assessment between the two medical opinions without fully embracing either one.").

Plaintiff states the ALJ should have obtained an opinion from an examining or treating physician. (Pl. Br. at 8-9). An ALJ need only develop the record—by re-contacting a claimant's treating medical providers, ordering a consultative examination, or requesting input from a medical expert—when the existing record is inadequate for the ALJ to make a determination regarding the

---

[2] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

claimant's disability. 20 C.F.R. §§ 416.912(e), 416.919a(b), 416.927(e)(2)(iii). In this case, the record was sufficient for the ALJ to render a decision regarding J.L.B.'s disability claim; therefore, the ALJ was not required to further develop the record.

## C. Credibility Determination

Plaintiff states the ALJ erred in failing to make a proper credibility determination. (Pl. Br. at 9-10). The Court is not to disturb an ALJ's credibility findings if they are supported by substantial evidence because "[c]redibility determinations are peculiarly the province of the finder of fact." Cowan v. Astrue, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995)). However, credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Id. Plaintiff alleges the ALJ did not make specific credibility findings. (Pl. Br. at 9).

The ALJ summarized Plaintiff's testimony and J.L.B.'s documentary evidence (Tr. 18-21, 23-24). Plaintiff testified on behalf of her daughter. (Tr. 18). Plaintiff stated she never requested the school place J.L.B. on an IEP. (Tr. 18). J.L.B. plays a trumpet in the school band and uses her inhaler before playing. (Tr. 18). J.L.B. has had no asthma attacks since the school year started, and she has not missed any school because of asthma. (Tr. 18). She had a five-day suspension due to fighting. (Tr. 18). J.L.B. is capable of making friends but has difficulty keeping them. (Tr. 18). She is disrespectful to teachers, lies, and steals money from her parents or other relatives, and her parents do not allow her to go to stores because of the behavior issues. (Tr. 18). Plaintiff testified J.L.B. takes no special education classes, and does not have any accommodations at school. (Tr. 20). She has "A" and "B" grades except for a "C" in math. (Tr. 20). Therefore, the ALJ linked Plaintiff's testimony to substantial evidence in the record, which the Northern District of Oklahoma and the Tenth Circuit has found satisfies the requirements on review.

> As the Tenth Circuit stated in Keyes–Zachary v. Astrue, 695 F.3d 1156, 1167 (10th Cir. 2012), common sense is the guide for the Court's review of the ALJ's credibility assessment. Here, it is evident the testimony of claimant's mother and grandmother, even if found fully credible, did not support limitations other than the less than marked limitation found by the ALJ …
>
> Thus, the undersigned finds that the ALJ's credibility assessment, while not as detailed or articulate as would have been preferable, is sufficient to express his view that the testimony … simply did not establish the severity of Claimant's limitations beyond the one less than marked limitation that he found. See Adams ex rel. D.J.W. v. Astrue, 659 F.3d 1297, 1302–03 (10th Cir. 2011) (allegations of severity were undercut by testimony of parent and child reflecting "very little limitation"); Porter v. Colvin, 525 F. App'x 760, 763-64 (10th Cir. 2013) (affirming ALJ's finding regarding mother's credibility).

Pouge ex rel. T.L.P. v. Colvin, No. 12-CV-254-PJC, 2013 WL 3367409, at *7 (N.D. Okla. July 5, 2013). Therefore, the record provided substantial evidence to support the ALJ's decision. The Tenth Circuit has explained it is not the reviewing court's position to reweigh the evidence or substitute judgment.

> "In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency." Branum v. Barnhart, 385 F.3d 1268, 1270 (10th Cir. 2004). Rather, we examine the record as a whole to ascertain whether the ALJ's decision to grant benefits for a closed period, and to deny benefits thereafter, is supported by substantial evidence and adheres to the correct legal standards. See Shepherd v. Apfel, 184 F.3d 1196, 1199 (10th Cir. 1999). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). It is "more than a scintilla, but less than a preponderance." Id.

Newbold v. Colvin, 718 F.3d 1257, 1262 (10th Cir. 2013). Accordingly, the decision provides substantial evidence a reasonable mind might accept as adequate to support the ALJ's conclusion.

### RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** to **DENY** Plaintiff's appeal and **AFFIRM** the Commissioner's decision in this case.

## OBJECTION

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma within fourteen days, no later than August 14, 2017.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine *de novo* any part of the magistrate judge's disposition to which a party has properly objected. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Id.; see also 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

SUBMITTED on July 31, 2017.

Gerald B. Cohn
**United States Magistrate Judge**